1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    HARJOT SINGH GREWAL,                      Case No.  23-cv-03621-JCS

              Plaintiff,
8
                                               **ORDER GRANTING PETITION FOR**
9         v.                                   **WRIT OF HABEAS CORPUS**

10   MOISES BECERRA, et al.,                    Re: Dkt. No. 1

              Defendants.
11

12

13   **I.      INTRODUCTION**

14          Petitioner Harjot Singh Grewal is a lawful permanent resident who immigrated to the

15   United States from India when he was 14 years old.  He is currently in Immigration and Customs

16   Enforcement ("ICE") custody at the Golden State Annex detention facility ("GSA"). He has been

17   in civil detention for over seventeen months without a bond hearing. Respondents are Moises

18   Becerra, Field Office Director of ICE's San Francisco Field Office;  Patrick J. Lechleitner, Deputy

19   Director and Senior Official Performing the Duties of the Director for ICE; Alejandro Mayorkas,

20   Secretary of the Department of Homeland Security ("DHS"); and Merrick B. Garland, the United

21   States Attorney General.

22          On July 21, 2023, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

23   § 2241 in which he asks the Court to order Respondents to immediately release him from DHS's

24   physical custody; or in the alternative, for the Court to conduct a bond hearing "where

25   Respondents must establish the necessity of further detention by clear and convincing evidence,

26   given the alternative of setting bail, if necessary (with consideration given to Mr. Grewal's ability

27   to pay), and imposing conditions of release that reasonably assure the safety of the community and

28   Mr. Grewal's future appearances."  Dkt. no. 1 (Petition) at 37.

United States District Court
Northern District of California

1    This matter is fully briefed and is suitable for resolution without a hearing. Civ. L.R. 7-

2    1(b).  For the reasons stated below, the Petition is GRANTED.[1]

3    **II.    BACKGROUND**

4        **A.    Petitioner's Past**

5        Petitioner was born in Ludhiana, India in January of 1994.  Grewal Decl. ¶ 1.  He and his

6    family are Sikhs and as such were subject to harsh conditions in India.  *Id.* ¶¶ 1-3.  Petitioner's

7    uncle, a soldier in the Indian army, refused orders to attack a Sikh community and then deserted;

8    he was subsequently captured and tortured and then committed suicide.  *Id.* After that, Petitioner's

9    family went into hiding.  *Id.*  ¶ 2.  Petitioner's father was "very protective" of him and of the rest

10   of the family because of what had happened to his brother but "he was a drinker" and would

11   sometimes beat Petitioner's mother in front of Petitioner and his sister.  *Id.*  ¶ 3.  Petitioner's

12   father is currently "very sick and suffering from liver and heart complications."  *Id.*

13       When Petitioner was nine years old, while still living in India, he was sexually assaulted by

14   a much older cousin.  *Id.*  ¶ 4.  Petitioner never received any therapy for this.  *Id.*

15       In 2008, when he was 14 years old, Petitioner immigrated to the U.S. with his parents and

16   sister, sponsored by an older brother.  *Id*. ¶ 5. In the same year, Petitioner obtained Lawful

17   Permanent Resident status. *Id*. Petitioner graduated from high school in 2012.  *Id.*  He attended

18   community college and Job Corp vocational school for about a year each but left school to work

19   full time to support his family.  *Id.*  ¶ 7.

20       Petitioner is a devout Sikh and before he was incarcerated, he spent much of his free time

21   with other Sikhs engaging in community service at their local temple. *Id.* ¶ 8.  He has a tattoo on

22   his right arm symbolizing the Khalistan, a group that fought for Sikh rights.  *Id.* He also has a

23   prayer tattoo.  *Id.*

24       In 2014, Petitioner went to India to see his grandmother. *Id*. ¶ 9. During that trip he was

25   assaulted and beaten by a group of people who saw Petitioner's tattoos.  *Id.*   A stranger came to

26   his aid and got them to stop but Petitioner was physically injured and traumatized by the assault.

27

28   [1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28
     U.S.C. § 636(c).

United States District Court
Northern District of California

1    *Id.* ¶¶ 9-10.

2         Upon his return to the United States, Petitioner turned to alcohol and marijuana. On

3    December 23, 2020, Petitioner was convicted of assault with a semiautomatic firearm after

4    shooting a pistol four times during an altercation at a party. *Id.* ¶ 14. Petitioner was sentenced to

5    six years in prison.  Declaration of Deportation Officer Cesar Contreras ("Contreras Decl.") ¶ 9 &

6    Ex. 2.  Upon his early release, on May 4, 2022, Petitioner was immediately detained by ICE,

7    which had issued a Notice to Appear charging Petitioner with removability under Section

8    237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") on the basis that he was a non-

9    citizen who had been convicted of an aggravated felony.  *Id.* ¶¶ 10-11.  Petitioner was transferred

10   to ICE custody at GSA. *Id.* ¶ 11. On the same date, ICE conducted a *Fraihat* custody hearing and

11   determined that Grewal would remain in custody.  *Id.*  On May 10, 2022, another *Fraihat* hearing

12   was held and it was again determined that Petitioner would remain in custody.

13        On September 8, 2022, Petitioner appeared before an immigration judge ("IJ") for an

14   individual merits hearing in the removal proceeding.  *Id.* ¶ 15 & Exs. 8, 9. On September 26,

15   2022, the IJ issued a written decision ordering Petitioner removed from the United States to India

16   and denied his applications for relief from removal.  *Id.* & Ex. 9. Petitioner filed a direct appeal of

17   that decision, which was denied on December 27, 2022.  *Id.* ¶ 16, 18 & Ex. 10.  On January 5,

18   2023, Petitioner filed a Petition for Review ("PFR"), along with a Motion to Stay Removal in the

19   United States Court of Appeals for the Ninth Circuit.  *Id.* ¶ 19.  As a result, Petitioner's removal

20   has been stayed; his PFR and stay motion remain pending.  *Id.*

21        On February 16, 2023, Petitioner went on a hunger strike at GSA. *Id.*  ¶ 20.  On March 10,

22   2023, the Enforcement and Removal Operations ("ERO") Bakersfield sub-office informed

23   Petitioner's attorney that Petitioner's request for release on humanitarian parole had been denied.

24   *Id.*  ¶ 21. On March 14, 2023, Petitioner was transferred to ICE's El Paso Processing Center in El,

25   Paso, Texas, to receive medical care in relation to his hunger strike. *Id.* ¶ 23.  On March 27, 2023,

26   Petitioner was transferred back to GSA as his hunger strike had ended and he no longer needed the

27   higher-level medical care provided at the El Paso Processing Center.  *Id.*  Petitioner is currently

28   detained at GSA.  *Id.*

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.    Details of Petitioner's Confinement

GSA is a contract detention facility, located in McFarland, California, which is owned and managed by The GEO Group, Inc. ("GEO"). Dkt. no. 16-1 (Gonzalez Decl.) ¶ 4. The facility is run by the Facility Administrator, who is a GEO employee, whose office is based in Bakersfield. *Id.*

Nancy Gonzalez is DHS Acting Assistant Field Office Director with ERO in the San Francisco Field Office ("ERO San Francisco"), but is based in Bakersfield, California. *Id.* ¶ 1. She is responsible for oversight of noncitizens detained at GSA. *Id.* Gonzalez states that she supports the ERO San Francisco Deputy Field Office Director and Field Office Director "in managing operations and procedures of enforcement and removal activity" throughout the Bakersfield area of responsibility, which includes "providing oversight and supervision of Supervisory Detention and Deportation Officers and their staff who maintain the docket management of ICE detainees at GSA." *Id.*

According to Gonzalez, she and her staff "directly liaise with the GSA Facility Administrator and other GEO personnel regarding the detainees at GSA." *Id.* ¶ 5. Her direct line supervisor is Deputy Field Office Director ("DFOD") Orestes Cruz, who is based in Bakersfield. *Id.* ¶ 6. Cruz is responsible for ICE immigration enforcement operations within nine counties, including Kern County. *Id.* Cruz directly reports to Respondent Moises Becerra, Field Office Director ("FOD") of the "San Francisco Area of Responsibility," which encompasses offices in seven cities in California, as well as Hawaii, Guam, and the Northern Mariana Islands. *Id.* ¶¶ 6, 7. According to Gonzalez, Becerra is responsible for the management and direction of all enforcement and removal operations and law enforcement operations within the boundaries of the San Francisco Area of Responsibility. *Id.* ¶ 7.

### C.    The Habeas Petition

On July 21, 2023, Petitioner filed a petition for writ of habeas corpus. The petition asserts claims for violation of Petitioner's rights to substantive and procedural due process under the Fifth Amendment based on his prolonged detention without an individualized hearing at which the government has offered clear and convincing evidence that he is a flight risk or poses a danger to

the community. In his petition, Petitioner asks the Court to order his immediate release from custody. In the alternative, Petitioner asks the Court to "hear and determine the facts, as described in 28 U.S.C. § 2243, at a prompt hearing before this Court where Respondents must establish the necessity of further detention by clear and convincing evidence, given the alternative of setting bail, if necessary (with consideration given to Mr. Grewal's ability to pay), and imposing conditions of release that reasonably assure the safety of the community and Mr. Grewal's future appearances[.]" Petition at 36-37.

## III.    JURISDICTION OVER THE PETITION

Respondents argue that this Court lacks jurisdiction over the Petition, relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), and Ninth Circuit cases citing it with approval in the immigration context, *see, e.g., Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020), which they contend require Petitioner to follow the "district-of-confinement" rule. Respondents' Return at 6-9. The undersigned agrees with all of the other judges in this District who have addressed the question and finds that the director of the San Francisco Field Office is a proper respondent and therefore that there is jurisdiction in this District even though Petitioner is detained in the Eastern District.

First, the Court rejects Respondents' assertion that under *Rumsfeld v. Padilla*, 542 U.S. 426, 443, 447 (2004) there is a bright-line rule that applies under the circumstances of this case establishing that jurisdiction is proper only in the district of confinement. In *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 U.S. Dist. LEXIS 56944, at *7-10 (N.D. Cal. Mar. 31, 2023), which involved a habeas immigration case brought by a petitioner who was also in ICE detention at GSA, the court explained why this argument is incorrect:

> In *Padilla*, the Supreme Court addressed whether the Southern District of New York had jurisdiction over a habeas petition brought by an enemy combatant detained on a naval brig in South Carolina. 542 U.S. at 432. Padilla named as respondents the president, the secretary of defense, and the commander of the naval brig where Padilla was being held. *Id*. The Court held that "in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." *Id*. at 435.[ ] Because "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions,' . . . jurisdiction over Padilla's habeas petition lies in the Southern District only if it has jurisdiction over" the commander of the naval brig where Padilla was being held, who "exercises day-to-day control

over Padilla's physical custody." *Id*. at 439, 442 (quoting 28 U.S.C. § 2241(a)). Because the proper respondent was in South Carolina, the Southern District of New York did not have jurisdiction over Padilla's petition. *Id*. at 446.

Critically, *Padilla* did not address the question, raised in this case, of which court has jurisdiction when the detainee is confined "in a facility run by an entity other than the federal government," *Saravia*, 280 F. Supp. 3d at 1185, and it is not at all clear that *Padilla* requires that the default district-of-confinement rule applies. The Ninth Circuit cases citing *Padilla* with approval in the immigration context also do not address this question. *See, e.g., Lopez-Marroquin v. Barr*, 955 F.3d 759, 759-60 (9th Cir. 2020) (three-paragraph opinion construing an emergency motion to remand as a habeas petition and transferring it to the Southern District of California under *Padilla*); *see also Ameen*, 2022 U.S. Dist. LEXIS 71843, 2022 WL 1157900, at *3 (addressing unreported Ninth Circuit cases citing *Padilla* in the immigration context and concluding that "[n]one of those cases addresses why a particular jurisdiction was appropriate, much less a situation where the habeas petitioner is being held in a private facility operated under a government contract").[ ] Thus, there is no controlling authority on the jurisdictional question presented here.

*Pham v. Becerra,* 2023 U.S. Dist. LEXIS 56944, at *8.

In fact, as the *Pham* court recognized, determining who is the "warden" under *Padilla* where the petitioner is detained in a private detention facility located in the Eastern District is "not a straightforward 'district-of-confinement' question, unless the correct respondent is also located in the Eastern District." *Id.* Courts in this District have concluded that the person with primary authority over a petitioner detained by ICE at GEO's private detention centers in the Eastern District, including GSA, is the San Francisco Field Office Director ("FOD"), who is a proper respondent in an immigration habeas case challenging the petitioner's detention. *See, e.g., See, e.g. J.P. v. Garland*, No. 23-CV-00612-AMO, 2023 WL 5059524 (N.D. Cal. Aug. 7, 2023) (holding in immigration habeas case the director of the San Francisco Field Office was the proper respondent and therefore that there was jurisdiction in this district even though the petitioner was detained in private detention facility in the Eastern District); *Diaz v. Becerra*, No. 22-CV-09126-DMR, 2023 WL 3237421, at *3 (N.D. Cal. May 2, 2023) (same); *Pham v. Becerra*, No. 23-cv-01288-CRB, 2023 U.S. Dist. LEXIS 56944, at *7-10 (N.D. Cal. Mar. 31, 2023) (same); *Salesh P. v. Kaiser*, No. 22-cv-03018-DMR, 2022 U.S. Dist. LEXIS 210104, at *12 (N.D. Cal. Nov. 18, 2022) (same); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *3 (N.D. Cal. June 14, 2022), appeal dismissed, No. 22-16205, 2022 WL 18587903 (9th Cir. Dec. 28, 2022)

(same); *Ameen v. Jennings*, No. 22-CV-00140-WHO, 2022 WL 1157900, at *4 (N.D. Cal. Apr. 19, 2022) (same); *Meneses v. Jennings*, No. 21-cv-07193-JD, 2021 WL 4804293, at *2 (N.D. Cal. Oct. 14, 2021) (same); *Perera v. Jennings*, No. 21-xc-04136-BLF, 2021 WL 2400981, at *2 (N.D. Cal. June 11, 2021) (same); *Domingo v. Barr*, No. 20-CV-06089-YGR, 2020 WL 5798238, at *2 (N.D. Cal. Sept. 29, 2020) (same); *Singh v. Barr*, No. 20-CV-02346-VKD, 2020 WL 2512410, at *3–4 (N.D. Cal. May 15, 2020) (same); *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 39 & 39 n.4 (N.D. Cal. 2020) (Chhabria, J.) (same); *Ortuno v. Jennings*, No. 20-CV-02064-MMC, 2020 WL 2218965, at *2 (N.D. Cal. May 7, 2020) (same);  *Doe v. Barr*, No. 20-CV-02263-RMI, 2020 U.S. Dist. LEXIS 74650, 2020 WL 1984266 (N.D. Cal. Apr. 27, 2020) (same); *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *5 (N.D. Cal. May 19, 2020) (same); *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *4 (N.D. Cal. Jan. 30, 2019) (same).

Here, as in the many other cases in which this Court has addressed the question, there is no dispute that the San Francisco FOD is the person with primary authority over Petitioner's arrest and detention.  *See* Gonzalez Decl. ¶ 7 ("In his capacity as FOD, FOD Becerra is responsible for, but not limited to, the management and direction of all ERO activities and law enforcement operations located within the geographic boundaries of the San Francisco Area of Responsibility ('AOR')[,]" including Bakersfield.  On the other hand, the evidence Respondents have presented as to the Deportation Officer ("DO"), Acting Assistant Field Office Director ("AFOD") Nancy Gonzalez and her immediate supervisor, Orestes Cruz, is insufficient to establish that any of these individuals can be considered Petitioner's "warden" under *Padilla*.  In particular, none of these individuals has the authority to release Petitioner. The DO, for example, states that he works in the Detained Unit at GSA, where his responsibilities include tracking detainees' removal proceedings, obtaining travel documents and effectuating removal of non-citizens who have been ordered removed.  Contreras Decl. ¶ 2; *see also Pham,* 2023 U.S. Dist. LEXIS 56944, at *8 (rejecting argument that Gonzalez and Cruz are "wardens" under *Padilla* because "Becerra, and not Gonzalez or Cruz, exercises control over Pham's physical custody.")  In addition, as to Gonzalez and Cruz, even if either was a "warden" under *Padilla*, both work for the San Francisco Field

1    Office and thus "any habeas relief ordered by the Court would necessarily be directed to the San

2    Francisco office, which is within the Northern District." *Meneses v. Jennings*, 2021 WL 4804293,

3    at *2.

4         In sum, because Becerra, as San Francisco FOD, is a proper respondent, jurisdiction in this

5    District is proper.

6    **IV.    MERITS OF THE PETITION**

7         **A.    Legal Standards Governing Entitlement to a Bond Hearing**

8         The INA authorizes the civil immigration detention of individuals pending removal

9    proceedings. Section 1226(a) is the general detention provision, authorizing ICE to detain a

10   noncitizen "pending a decision on whether [he] is to be removed from the United States," while

11   allowing the government to release on bond of at least $1,500 or on conditional parole. 8 U.S.C. §

12   1226(a). Section 1226(c) contains an exception to the general provision, making detention

13   mandatory for noncitizens who are deportable for certain criminal convictions, without the

14   opportunity for a bond hearing before an IJ. 8 U.S.C. § 1226(c). A noncitizen subject to

15   mandatory detention under §1226(c) can only be released for witness protection purposes and if

16   the noncitizen "will not pose a danger to the safety of other persons or of property and is likely to

17   appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

18        In *Demore v. Kim*, the Supreme Court held that § 1226(c) is constitutional on its face. 538

19   U.S. 510, 530 (2003); *but see id.* at 532-33 (Kennedy, J., concurring) ("Were there to be an

20   unreasonable delay by the INS in pursuing and completing deportation proceedings, it could

21   become necessary then to inquire whether the detention is not to facilitate deportation, or to

22   protect against risk of flight or dangerousness, but to incarcerate for other reasons."). However,

23   the Court in *Demore* did not foreclose as-applied challenges and since that case was decided, the

24   Supreme Court has explicitly declined to decide whether detention under § 1226(c) is

25   constitutional in particular circumstances. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018);

26   *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of [§ 1226(c)]

27   does not foreclose as-applied challenges").

28        In 2015, the Ninth Circuit issued a decision in its "decade-long examination of civil, *i.e.*

United States District Court
Northern District of California

8

non-punitive and merely preventative, detention in the immigration context" in which it considered the procedural protections available to noncitizens detained under 8 U.S.C. §§ 1225(b) and 1226(c).  *See Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *reversed by Jennings v. Rodriguez*, 583 U.S. ——, 138 S.Ct. 830, 200 (2018).  *In Rodriguez III*, a certified class of noncitizens challenged their prolonged detentions pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without the provision of individualized bond hearings.  804 F.3d at 1065. Following the entry of a preliminary injunction, which was affirmed on appeal, *see Rodriguez v. Robbins* ("*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013), the district court granted summary judgment to the class and entered a permanent injunction requiring the government to provide a bond hearing to any class member subject to detention for more than six months. 804 F.3d at 1065. The district court also required the government to prove by clear and convincing evidence that the detainee was a flight risk or a danger to the community in order to justify the denial of bond. *Id*. at 1071. On appeal, the Ninth Circuit affirmed summary judgment and the entry of the permanent injunction as to the section 1226(c), 1225(b), and 1226(a) subclasses, applying the canon of constitutional avoidance and construing sections 1225(b) and 1226(c) as imposing a six-month time limit on detention;  after the six-month time limit passed, the court held, the government could continue detention only under the authority of section 1226(a). *Id*. at 1079, 1082.

In *Jennings*, the Supreme Court reversed *Rodriguez III*, concluding that the Ninth Circuit had misapplied the canon of constitutional avoidance as to sections 1225(b), 1226(c), and 1226(a), and finding that its interpretations of those provisions to be "implausible." 138 S.Ct. at 842.  As relevant here, the Court rejected the argument that those provisions contain an implicit six-month limit on the length of detention, observing that "nothing in the statutory text imposes any limit on the length of detention" or "even hints that those provisions restrict detention after six months." *Id*. at 842, 843. The Court in *Jennings* only addressed statutory challenges to the INA's detention scheme, however, remanding the question of whether prolonged detention without an individualized bond hearing violates the due process clause of the Fifth Amendment. 138 S. Ct. at 851.

Upon remand, the Ninth Circuit stated its "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional" and remanded the issue to the district court to consider it in the first instance. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018).

### B.    Discussion

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Although Respondents rely on *Demore* in support of their assertion that Petitioner's detention is constitutional, that case provides little guidance because the Court found only that Section 1226(c) was constitutionally permissible as to detention for the "brief period necessary" to complete removal proceedings, which in that case was six months. 538 U.S. at 513, 530-531. However, the Court's holding was premised on the fact that detention pending removal hearings has "a definite termination point" and its finding that at that time, detention pending removal typically "last[ed] roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id*. at 529-30.

Here, in contrast, Petitioner's detention pending removal has been over seventeen months, that is, almost three times the length of the detention that was at issue in *Demore*. *See, e.g., Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *4 (N.D. Cal. Jan. 25, 2019) (noting that "[i]n contrast to the situation at the time *Demore* was decided, case processing times today are considerably longer" and concluding that petitioner's detention for over one year without a bond hearing violated his due process rights). Moreover, according to the Ninth Circuit docket, the PFR that is pending before it is being considered for oral argument in January 2024 and a decision may not issue for many months after that.

Still, "there remains 'a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional.'" *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *7 (N.D. Cal. Apr. 6, 2020) (quoting *Gonzalez*, 2019 WL 330906, at *3). As there appears to be no controlling authority establishing a bright-line

10

1    rule for a due process right to receive periodic bond hearings, the Court finds that it is appropriate

2    to conduct an individualized due process analysis under *Mathews v. Eldridge*, 424 U.S. 319, 333

3    (1976). *See Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *8 (N.D. Cal.

4    Nov. 18, 2022) (applying *Mathews* to decide whether detention of noncitizen under § 1226(c) was

5    unconstitutional and collecting cases in which other courts have done the same).

6            In *Mathews*, the Supreme Court held that "[t]he fundamental requirement of due process is

7    the opportunity to be heard at a meaningful time and in a meaningful manner." 424 U.S. at 333.

8    The Court established a three-part test that requires courts to consider "(1) the private interest

9    affected, (2) the government's interest, and (3) the value added by alternative procedural

10   safeguards to what has already been provided in the particular situation before the court." *Soto v.*

11   *Sessions*, No. 18-cv-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018) (citing

12   *Mathews*, 424 U.S. at 334-35).

13           The first factor is Petitioner's interest. Courts have held that there is a strong private

14   interest based on the duration of the detention. *De Paz Sales v. Barr*, No. 19-cv-04148-KAW,

15   2019 WL 4751894, at *7 (N.D. Cal. Sept. 30, 2019) (finding a strong private interest where the

16   petitioner "risks continued detention absent a bond hearing"). "[L]iberty is the norm, and detention

17   prior to trial or without trial is the carefully limited exception." *Rodriguez IV*, 909 F.3d at 256-57

18   (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). In this case, Petitioner has been

19   detained for seventeen months without a bond hearing, and there is no reasonably certain end to

20   his detention. This period of detention leans heavily toward finding a strong private interest at

21   stake. *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 776 (N.D. Cal. 2019) (finding a strong private

22   interest where the petitioner had been detained 22 months and received his last bond hearing 16

23   months prior); *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30,

24   2020) (finding petitioner "undoubtedly has a strong liberty interest to be free from arbitrary or

25   unreasonable imprisonment" where he had been detained for one year without a bond hearing).

26           The Court rejects Respondents' assertion that Petitioner's interest is diminished because he

27   has already "received significant process before the Agency, as well as the Ninth Circuit."

28   Respondents' Return at 17.  Respondents point to the *Fraihat* custody determinations when

United States District Court
Northern District of California

11

1    Petitioner was first taken into ICE custody, but *Fraihat* custody hearings do not provide for a

2    neutral arbiter or for the submission of evidence by the detained noncitizen and there is no

3    evidence in the record as to the type of review ICE conducted as to Petitioner's detention in this

4    case or the procedural protections – if any – he received.

5        Likewise, Respondents' reliance on the extensions of briefing deadlines that were

6    requested by Petitioner and granted by the BIA and the Ninth Circuit, *see id*. at 17-18, is

7    misplaced.  Respondents' own evidence indicates Petitioner made these requests because he was

8    looking for counsel or because of scheduling conflicts on the part of his attorney once he found

9    counsel.  Contreras Decl. ¶ 14.  The Court finds no authority suggesting that affording a petitioner

10   the opportunity to find counsel who can represent him in removal proceedings in any way

11   diminishes his due process interest in connection with prolonged detention.

12       The Court also rejects Respondents' assertion that Petitioner's interest is diminished

13   because the length of his detention is a result of his "litigation choices."  Respondents' Return at

14   18.  The "choices" Respondents cite are nothing less than asserting Petitioner's legal rights with

15   respect to remaining in the United States, where he has lived since he was fourteen years old

16   having entered the country lawfully with his family. As Judge Donato has observed in the face of

17   a similar scenario where the government argued a noncitizen's detention could have been

18   shortened if the detainee had only abandoned his asylum application, "it ill suits the United States

19   to suggest that he could shorten his detention by giving up these rights." *Masood v. Barr*, No. 19-

20   CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020);  see *Romero Romero v. Wolf*, No.

21   20-CV-08031-TSH, 2021 WL 254435, at *4 (N.D. Cal. Jan. 26, 2021), appeal dismissed sub nom.

22   *Romero Romero v. Garland*, No. 21-15565, 2021 WL 2660662 (9th Cir. June 8, 2021) (chastising

23   the government for making the same argument as to petitioner's BIA appeal and observing,

24   "Petitioner's BIA appeal (and his appeal to the Ninth Circuit, should he pursue it) is perfectly

25   legitimate; if his removal becomes final, he loses the right to live in the country he's lived in since

26   he was an infant (he's over 40 now), 'and it ill suits the United States to suggest that he could

27   shorten his detention by giving up these rights and abandoning his [appeal].'") (quoting *Masood*,

28   2020 WL 95633, at *3).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The second factor addresses the government's interest. Respondents argue that detention

2    serves the government's interest because of the government's strong interest in immigration

3    enforcement generally, and because Petitioner is subject to a final administrative order of removal

4    and the government has devoted significant resources to securing his removal. Respondents'

5    Return at 19-20.  However, the governmental interest at stake with respect to the instant habeas

6    petition "is the ability to detain Petitioner *without providing him with [a] bond hearing*, not

7    whether the government may continue to detain him."  *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d

8    762, 777 (N.D. Cal. 2019) (emphasis in original).  Respondents do not explain how providing

9    Petitioner with a bond hearing after 17 months of detention would undermine its interest in

10   securing his removal, given that the stay of removal will remain in place pending the Ninth

11   Circuit's decision regardless of whether or not a bond hearing is held *and* Respondents will be

12   able to continue to detain Petitioner upon a proper showing of flight risk and/or danger to the

13   community.  "After all, the purpose of a bond hearing is to inquire whether the [noncitizen]

14   represents a flight risk or danger to the community." *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020

15   WL 510347, at *3 (N.D. Cal. Jan. 30, 2020). The Court therefore concludes that requiring the

16   Respondents to provide Petitioner with a bond hearing does not meaningfully undermine the

17   government's interest.

18   The final factor looks at the value of additional safeguards. *See Soto*, 2018 WL 3619727, at

19   *3.  In this case, Petitioner has not received any bond hearing during his seventeen-month

20   detention. Accordingly, the value of additional procedural safeguards—*i.e.*, a bond hearing—is

21   high, because "Respondents have provided virtually no procedural safeguards at all." *Jimenez*,

22   2020 WL 510347, at *3.

23   Based on its consideration of the *Mathews* factors, the Court concludes that Petitioner's

24   continued detention without a bond hearing violates his due process rights under the Fifth

25   Amendment.

26   The Court further finds that under *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011),

27   the government must justify Petitioner's continued detention by establishing by clear and

28   convincing evidence that Petitioner is a flight risk or a danger to the community.  *See Salesh P. v.*

*Kaiser*, No. 22-CV-03018-DMR, 2022 U.S. Dist. LEXIS 210104, *24 (Nov. 18, 2022) (holding

that due process required bond hearing for petitioner detained under Section 1226(c) and that at

the bond hearing the government was required to justify the petitioner's continued detention "by

establishing by clear and convincing evidence that he is a flight risk or a danger to the community

pursuant to *Singh v. Holder*, 638 F.3d at 1203.");  *see also, J.P.*,  2023 U.S. Dist. LEXIS 137192,

at *13-14 (same);  *Pham*, 2023 U.S. Dist. LEXIS 56944, at *7 (same).  In *Singh*, the Ninth Circuit

held that "the government must prove by clear and convincing evidence that an alien is a flight

risk or a danger to the community to justify denial of bond," because "civil commitment for *any*

purpose constitutes a significant deprivation of liberty." 638 F.3d at 1203-04 (emphasis in

original) (citation omitted).  That holding applies to Petitioner's prolonged detention in this case. [2]

       Finally, the Court declines to conduct a bond hearing in the first instance and instead

orders that a bond hearing be held by an IJ within 14 days of this Order.  The undersigned agrees

with the reasoning of Judge Freemen in the face of a similar request:

> Even if [Petitioner] is correct that the Court has the authority to hold a bond hearing, the more prudent course is to allow an IJ to make determinations about [Petitioner's] risk of flight or danger to the community and eligibility for [GSA's Intensive Supervision Appearance Program].  *See Mansoor v. Figueroa*, No. 317CV01695GPCNLS, 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program such as ISAP.");  *Lopez*, 631 F.Supp.3d at 882 (declining to order immediate release and instead ordering a bond hearing before an IJ).

---

[2] Respondents suggest that the Ninth Circuit's decision in *Rodriguez-Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) has called *Singh*'s holding on this point into question.  Respondents' Return at 22. The undersigned, like all of the judges in this District who have addressed this argument, concludes that "the reasoning of *Singh* and its holding remains applicable to § 1226(c) cases, like this one, where there is a 'substantial liberty interest at stake[ ]' [because] *Rodriguez-Diaz* considered [only] whether a second bond hearing was constitutionally required in the § 1226(a) context, and specifically declined to opine on whether *Singh* remains good law in § 1226(c) cases." *Pham*, 2023 U.S. Dist. LEXIS 56944, *20-21 (citing *Singh*, 638 F.3d at 1204; *Perera*, 2021 U.S. Dist. LEXIS 110194, 2021 WL 2400981, at *6; *Doe v. Garland*, No. 3:22-CV-03759-JD, 2023 U.S. Dist. LEXIS 4312, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (holding that the government shall bear the burden in a constitutionally required bond hearing in the § 1226(c) context post-*Rodriguez-Diaz*)).

United States District Court
Northern District of California

1  *I.E.S. v. Becerra*, Case No. 23-cv-3783, United States District Court for the Northern District of

2  California, docket no. 20 (Sept. 27, 2023) at pp. 14-15.

3  **V.      CONCLUSION**

4          For the foregoing reasons, the Petition for a Writ of Habeas Corpus under 28 U.S.C. §

5  2241 is GRANTED. Petitioner must be provided with a bond hearing before an immigration judge

6  within 14 days of the date of this Order. At that hearing, DHS must establish by clear and

7  convincing evidence that Petitioner is a flight risk or a danger to the community in order to

8  continue his detention.

9          **IT IS SO ORDERED.**

10

11  Dated:  October 4, 2023

12  _____

13  JOSEPH C. SPERO
    United States Magistrate Judge